**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| NEIGHBORFAVOR INC.<br><br>        Plaintiff<br><br>v.<br><br>HEY FAVOR, INC.<br><br>        Defendant | Civil Action No. 1:22-cv-00618-LY |

# Motion for Preliminary Injunction

Travis R. Wimberly
State Bar No. 24075292
Alexandra H. Bistline
State Bar No. 24092137
Daniel S. Martens
State Bar No. 24116722
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, TX 78702
(512) 322-5200
(512) 322-5201 (fax)
twimberly@pirkeybarber.com
abistline@pirkeybarber.com
dmartens@pirkeybarber.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

Introduction ................................................................................................. 1

Facts ........................................................................................................... 1

    A.    Favor and its Federally Registered FAVOR Marks............................... 1

    B.    Defendant's Infringing Adoption and Use of FAVOR ......................... 4

    C.    The Parties' Pre-Lawsuit (and Pre-Motion) Correspondence................ 6

    D.    Actual Consumer Confusion ................................................................ 6

Argument and Authorities ........................................................................... 7

I.    Favor is substantially likely to succeed on its claims........................... 8

    A.    Favor owns legally protectable marks.................................................. 8

    B.    Defendant's unauthorized use of FAVOR is likely to confuse (and has already confused) consumers. ...................................................... 9

II.    Favor will suffer irreparable harm without injunctive relief......................... 17

III.    The balance of equities favors an injunction. ................................... 18

IV.    An injunction will strongly serve the public interest. .................................... 19

Conclusion ................................................................................................. 20

Certificate of Conference Under Local Rule CV-7(G)............................... 21

Certificate of Service.................................................................................. 21

## INTRODUCTION

After years of operating under the name THE PILL CLUB, in late March 2022 Defendant changed its name to FAVOR. This decision was indefensible, considering that the exact same mark has been used and federally registered by Plaintiff NeighborFavor Inc. ("Favor") to sell related delivery services for nearly a decade. Favor quickly objected, but Defendant insisted that using an identical mark for related services would not confuse consumers.

Defendant was unsurprisingly wrong, and it did not take long for confusion to set in. In just the few months since Defendant's infringing rebrand, numerous consumers have already confused the two companies in documented communications. Some of these confusion instances have been especially troubling—for example, last month, when a customer of Defendant's emailed her specific *birth-control prescription information and dosages* to Favor by mistake.

This situation is untenable and cannot continue. Yet Defendant has refused to stop using the FAVOR mark, apparently more concerned with the optics of admitting its mistake than with the ongoing damage it is causing to Favor *and* to the consuming public. Favor has no adequate remedy at law. Only prompt injunctive relief can mitigate the irreparable harm being caused by Defendant's conduct.

## FACTS

### A.    Favor and its Federally Registered FAVOR Marks

Favor is the creator and operator of a well-known mobile application and website for on-demand delivery. Ex. A, Declaration of Jag Bath ("Bath Decl.") ¶ 2. Representative screenshots of Favor's mobile application are below:

1

 

*Id.* ¶ 3 & Ex. 1.

Since at least as early as November 11, 2012, Favor has continuously done business in U.S. commerce under the mark and name FAVOR. *Id.* ¶ 4. Favor's platform enables customers to browse, order, pay for, track, pick up, and transport a variety of goods to their homes and offices. *Id.* ¶ 5. Goods available for delivery through Favor's platform include, but are not limited to, food, toiletries, groceries, and prescription medications. *Id.* ¶ 6. Favor makes thousands of prescription-medication deliveries to customers each year, which may include birth-control

prescription medications. *Id.* ¶ 7. Favor is also able to deliver skin-care products, such as topical acne treatments, and sexual-wellness products. *Id.* ¶ 8.

In addition to its primary mark FAVOR, Favor also uses and owns several other related marks, including FAVOR DELIVERY, FAVOR RUNNER, and stylized word and design variants incorporating the word FAVOR (together, the "FAVOR Marks"). *Id.* ¶ 9. Favor extensively markets its goods and services under the FAVOR Marks online, on social media, on Favor's mobile application, and in other online and offline advertising. *Id.* ¶ 10. Favor has completed over sixty million deliveries and earned hundreds of millions of dollars in total revenue under its FAVOR Marks. *Id.* ¶ 11. As a result of Favor's commercial success and popularity, it has been profiled in numerous national news publications including *Forbes, Wired*, and CNBC. *Id.* ¶ 12. Favor's commercial success and popularity among consumers led State of Texas' largest private employer and largest grocery chain, H-E-B, to acquire Favor in 2018. *Id.* ¶ 13.

Favor owns numerous registrations with the U.S. Patent & Trademark Office (PTO) for its FAVOR Marks. *Id.* ¶ 14; Ex. B., Declaration of Frances Lau ("Lau Decl.") Ex. 2 (U.S. Reg. Nos. 4,424,908; 6,001,531; 6,633,049; and 6,633,048). These registrations cover a wide array of goods and services across various classes, including for example:

- "On-line ordering services in the field of groceries, restaurant take-out and delivery, and other consumer goods." (Class 35)

- "Operating on-line marketplaces for sellers of goods and/or services; Providing a website featuring an online marketplace for exchanging goods and services with other users." (Class 35)

- "Delivery services, namely, pick-up, transportation and delivery of groceries, restaurant food, alcoholic beverages, and other goods by various types of transportation." (Class 39)

- "Online retail store services featuring t-shirts, sweatshirts, hats, and delivery bags." (Class 35)

- "Downloadable mobile applications for use in arranging for pick-up, transportation and delivery of groceries, restaurant food, alcoholic beverages, and other goods; downloadable mobile applications for use in browsing, ordering, paying for, and tracking groceries, restaurant food, alcoholic beverages, and other goods; downloadable mobile applications for use in coordinating same-day transportation and delivery services in local areas." (Class 9)

- "Providing temporary use of online non-downloadable software for use in arranging for pick-up, transportation and delivery of groceries, restaurant food, alcoholic beverages, and other goods; providing temporary use of online non-downloadable software for use in browsing, ordering, paying for, and tracking groceries, restaurant food, alcoholic beverages, and other goods; providing temporary use of online non-downloadable software for use in coordinating same-day transportation and delivery services in local areas." (Class 42)

Lau Decl. Ex. 2.

Favor's PTO registrations are all valid and subsisting. Bath Decl. ¶ 15. The oldest registration—which covers the same mark and class of services as Defendant's infringing application for FAVOR, discussed below—issued almost nine years ago on October 29, 2013. *Id.* That registration has obtained incontestable status under 15 U.S.C. § 1065. *Id.*; *see* Lau Decl. Ex. 3 (Favor's combined declaration of use and incontestability, filed with the PTO on October 30, 2018).

## B.    Defendant's Infringing Adoption and Use of FAVOR

Defendant offers home delivery of prescription medications, skin care treatments, and sexual-health products, with an emphasis on contraception. *See* Lau Decl. Exs. 1 & 5 (screenshots of Defendant's website and mobile app). For several

4

years, Defendant operated under the name THE PILL CLUB. *See id.* Ex. 4 (archived

screenshot of Defendant's website from March 17, 2022 showing this name). But in

late March 2022, Defendant publicly rebranded to FAVOR, despite Favor's highly

public prior use of (and federal registrations for) that exact same mark for related

services. *See id.* Ex. 8 (screenshots of Defendant's rebranding announcements).

Defendant's rebranded mobile application on the Apple app store is shown below:



*Id.* Ex. 5.

On December 6, 2021, Defendant applied to register FAVOR with the PTO. *Id.*

Ex. 7. Despite presumably tactically drafting the services identification to reduce the

chances that the examining attorney would find a conflict with Favor's prior

registrations, Defendant's application still explicitly lists several services highly

similar to Favor's, including for example "online ordering services," "order fulfillment services," and "mail order pharmacy services," all in Class 35. *Id.*

### C.    The Parties' Pre-Lawsuit (and Pre-Motion) Correspondence

Favor learned of Defendant's infringing rebrand to FAVOR not long after Defendant publicly launched the rebrand and started operating under its new name. Bath Decl. ¶ 16. Soon after, Favor sent a cease-and-desist letter on May 11, 2022, which objected to Defendant's use of FAVOR and the infringing application it had filed with the PTO. *See id.*; Lau Decl. Ex. 9.

Defendant responded to the letter on June 3, 2022, denying any likelihood of confusion and refusing to cease its use of FAVOR. Lau Decl. Ex. 10. Defendant's response claimed that confusion was "unlikely," *id.* at 1, but as discussed below, the facts show otherwise. Between June 3 and now, the parties continued to discuss the matter by phone and email, but could not reach any resolution. Bath Decl. ¶ 17.

### D.    Actual Consumer Confusion

In just the few months since Defendant's rebrand, Favor has already observed multiple instances of actual consumer confusion. *Id.* ¶ 18. For example, several of Defendant's customers have mistakenly emailed Favor's customer support. *Id.* Ex. 2. One such customer mistakenly wrote to Favor on June 10, 2022, "I've been a member of The Pill Club for a few years, and remained such during the transition to Favor." *Id.* The customer explained that she attempted to "login and see my account, but it doesn't appear to exist." *Id.* Quite alarmingly, the customer then included in the email her highly sensitive and personal prescription medications and doses. *Id.* She

6

pleaded, "I don't want to be off of [my medication] for too long and have to re-get used to it." *Id.*

Favor has also received communications from consumers who incorrectly professed a belief that Favor had merged with Defendant. *See id.* One such customer wrote, "I received an update text from the Pill Club about my monthly Rx shipment and it looks like you guys have merged." *Id.* Another customer wrote, "I cannot login to my account. I formerly had a pill club account." *Id.* Yet another customer emailed Favor to cancel their subscription with *Defendant*, noting that they "had an account with pill club with this email" and that they were "trying to get account access with your company now to cancel my subscription." *Id.* Despite bringing these (and other) confusion instances to Defendant's attention, Defendant has declined to stop using the infringing FAVOR mark. *Id.* ¶ 19.

## ARGUMENT AND AUTHORITIES

As the past several weeks have shown, the current state of affairs between the parties is untenable. Favor is suffering irreparable harm on a daily basis, and the consuming public is experiencing frequent confusion, all because of Defendant's indefensible decision to rebrand to the identical mark FAVOR.

Defendant could have picked almost any name under the sun for its rebrand. Instead, it picked a name it knew, or at least reasonably should have known, has been used and federally registered by Favor for nearly a decade.

To stop the irreparable harm and to protect consumers from further confusion, Favor seeks a preliminary injunction ordering Defendant to immediately cease all use of the infringing marks. *See* Fed. R. Civ. P. 65(a). The Lanham Act, under which

7

Favor's federal claims arise, explicitly authorizes injunctive relief. *See* 15 U.S.C. § 1116; *see also* Compl. ¶¶ 36–44. Favor meets all four requirements for this relief: (1) Favor is substantially likely to succeed on the merits; (2) it will suffer irreparable harm without injunctive relief; (3) the balance of equities calls for issuing an injunction; and (4) an injunction strongly favors the public interest. *See Winter v. NRDC,* 555 U.S. 7, 20 (2008); *Paulsson Geophysical Servs., Inc. v. Sigmar,* 529 F.3d 303, 309 (5th Cir. 2008).

## I.     Favor is substantially likely to succeed on its claims.

Favor is highly likely to succeed on the merits. To show trademark infringement and unfair competition, a plaintiff must establish (1) the ownership of a legally protectable mark, and (2) a likelihood of consumer confusion. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008); *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193–94 (5th Cir. 1998). This same test applies to federal claims under the Lanham Act, *see* 15 U.S.C. §§ 1114 & 1125(a), and claims under common law. *See, e.g.*, *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 547 n.15 (5th Cir. 1998).

### A.     Favor owns legally protectable marks.

There is no question about Favor's trademark rights and priority. Favor has used its FAVOR Marks (as defined in the complaint, ECF No. 1) in U.S. commerce continuously since as early as November 11, 2012. Favor's prior use, which well predates Defendant's unauthorized infringing use, gives Favor protectable and senior trademark rights, including for delivery of prescription medications. *See Union Nat'l*

*Bank of Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842-43 (5th Cir. 1990) (explaining that priority of use determines ownership and the right to enjoin a "junior" user).

Favor also owns multiple federal registrations with the PTO for its FAVOR Marks, including two for the word FAVOR by itself, one of which has obtained incontestable status under 15 U.S.C. § 1065. Favor's registrations provide prima facie evidence that the marks are valid, that Favor owns them, and that Favor has the exclusive right to use the marks in U.S. commerce on the covered goods and services. *See* 15 U.S.C. § 1115(a). Favor's oldest registration, with incontestable status, provides *conclusive* evidence of these same facts. *See id.* § 1115(b). Favor's registrations also confer a nationwide right of priority and nationwide constructive use for the covered goods and services. *See id.* § 1057(c).

### B. Defendant's unauthorized use of FAVOR is likely to confuse (and has already confused) consumers.

Defendant's unauthorized use of the identical mark FAVOR is likely to confuse consumers. The Fifth Circuit uses eight nonexhaustive factors to evaluate the likelihood of confusion (often called the "digits" of confusion): (1) the type of mark allegedly infringed, (2) the similarity between the marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) evidence of actual confusion, and (8) the degree of care exercised by potential purchasers. *Smack Apparel Co.*, 550 F.3d at 478. "No single factor is dispositive, and a finding of a

likelihood of confusion need not be supported by a majority of the factors." *Id.* Here, each relevant factor weighs in Favor's benefit.

### 1.    Favor's marks are strong (factor one).

The FAVOR Marks are strong. Courts look at two aspects to determine a mark's strength: its inherent strength, and its standing in the marketplace. *Future Proof Brands, LLC v. Molson Coors Bev. Co.*, 982 F.3d 280, 290 (5th Cir. 2020).

The more distinctive the mark, the stronger it is inherently. *Viacom Int'l v. IJR Capital Inv., LLC*, 891 F.3d 178, 193 (5th Cir. 2018). Courts typically assess inherent strength on a spectrum of distinctiveness with five categories, from weakest to strongest: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Future Proof*, 982 F.3d at 290. Courts categorize marks "by their relationship to the products they represent," and arbitrary marks "bear no relationship to the products or services for which they are applied." *Id.* (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 241 (5th Cir. 2010)).

The FAVOR Marks are either arbitrary or, at worst, on the strong end of suggestive. The term "favor" bears little relationship to Favor's offerings. An ordinary consumer encountering the mark for the first time almost certainly could not divine from the mark alone what Favor offers as a company. *See, e.g., Firebirds Int'l, LLC v. Firebird Restaurant Group, LLC*, 397 F. Supp. 3d 847, 861 (N.D. Tex. 2019) (finding that the mark FIREBIRDS was "at least[] suggestive . . . and may even be arbitrary" because it was "unclear if an ordinary customer could even imagine what type of services Plaintiff provides from the word 'Firebirds'"). The FAVOR Marks are thus

inherently strong and "entitled to the broadest scope of protection." *Oleg Cassini, Inc. v. Cassini Tailors, Inc.*, 764 F. Supp. 1104 (W.D. Tex. 1990).

Adding to this inherent strength, the FAVOR Marks also carry high marketplace strength from years of continuous use and major commercial success, including tens of millions of deliveries and hundreds of millions of dollars in total revenue earned by Favor under those marks. *See Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., LLC*, 83 F. Supp. 2d 810, 819 (S.D. Tex. 1999) ("Marks may be strengthened by . . . extensive advertising, length of time in business, public recognition, and uniqueness.") (citations and quotations omitted). Favor has received media coverage in major nationwide outlets, and its success and popularity ultimately led the State of Texas' largest grocery chain and largest privately held employer, H-E-B, to acquire Favor in 2018. Taking all this together, the first factor weighs heavily for confusion.

### 2. Defendant is using an identical mark for closely related services (factors two and three).

The second confusion factor, which looks at the similarity of the marks, requires little discussion. Defendant is using the *exact same* mark, FAVOR, that Favor has owned and federally registered for nearly a decade. Any differences in how the parties stylize or present the word FAVOR are trivial, as confirmed by the fact that consumers are expressing actual confusion on a regular basis. *See supra* Facts, Part D & *infra* Part I.B.5; *see also Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*, 295 F. App'x 630, 635 (5th Cir. 2008) ("The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that

prospective purchasers are likely to believe that the two users are somehow associated.").

On the third factor, the parties' services are closely related. Courts in the Fifth Circuit assess whether the services are "similar enough to cause confusion as to source or affiliation" or, alternatively, if the defendant's business is one into which the plaintiff would "naturally be perceived to expand." *Elvis Presley,* 141 F.3d at 202. A likelihood of confusion may exist even without *any* overlap in the parties' offerings, *see, e.g.*, *Am. Century*, 295 F. App'x at 636 (finding a likelihood of confusion where one party offered automobile insurance while the other offered financial services), though in this case there is extensive overlap.

Specifically, both parties here offer delivery of consumer products. And there is major overlap in the *specific* types of products they deliver, including prescription medications, skin-care products, and sexual-wellness products. While Defendant may argue that Favor also delivers other types of products besides just these, that fact does not help Defendant's position. *See Moore Bus. Forms, Inc. v. Ryu*, 960 F.2d 486, 490 (5th Cir. 1992) (explaining that this factor focuses on the "aspects in which the businesses overlap").

The likelihood of confusion becomes even more acute because of Favor's relationship with its parent company H-E-B, which has in-store pharmacies that offer delivery at many of its locations. *See* Bath Decl. ¶ 20. It would be reasonable for a consumer to perceive that Defendant's services are an expansion, or otherwise

affiliated with, Favor's services. *See Elvis Presley*, 141 F.3d at 202. In short, the second and third factors both strongly suggest a likelihood of confusion.

### 3.  The parties market through the same advertising channels to the same types of consumers (factors four and five).

The Court can analyze the fourth and fifth confusion factors together. Both factors strongly suggest confusion.

Because both parties sell to the same end-users—i.e., consumers seeking home delivery of consumer staples including prescription medications—the likelihood of confusion increases. *See, e.g.*, *Gruma Corp. v. Mexican Restaurants, Inc.*, 497 F. App'x 392, 396 (5th Cir. 2012) ("The likelihood of confusion increases when two users of the mark compete directly for end-users in the same market."). Likewise, both parties advertise online, through mobile applications, and on social media platforms. *See Interactive Life Forms, LLC v. Weng*, Case No. A-12-CA-1182-SS, 2013 WL 12116329, at *2 (W.D. Tex. Jan. 15, 2013) (finding a likelihood of success on the merits of trademark infringement claim where products at issue "sold in same type of stores, advertised in similar ways, and marketed and sold to the same types of customers"); *see also Moore Business Forms*, 960 F.2d at 490 (affirming finding of likelihood of confusion where there was "considerable overlap between the purchasers and sales techniques" of the parties). These factors support the likelihood of confusion.

### 4.  Defendant rebranded to FAVOR with knowledge of—or at least willful blindness towards—Favor's prior registered trademark rights (factor six).

"Proof of the defendant's intent to benefit from the good reputation of the plaintiff's products is not required in order to establish trademark

infringement." *Oreck Corp. v. U.S. Floor Sys. Inc.*, 803 F.2d 166, 173 (5th Cir. 1986). At the same time, however, "[a] showing that the defendant intended to use the allegedly infringing mark with knowledge of the predecessor's mark may give rise to a presumption that the defendant intended to cause public confusion." *Conan's Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 151 n.2 (5th Cir. 1985).

At a minimum, Defendant had constructive knowledge of Favor and its FAVOR Marks before Defendant rebranded to the exact same mark in March 2022. Favor owns four separate federal registrations for its FAVOR Marks, two of which are for the standalone word mark FAVOR, and all four of which feature coverage in Class 35 (the same class covered by Defendant' infringing application for FAVOR). *See* Lau Decl. Exs. 2 & 7. These registrations, all of which issued before March 2022, give Favor nationwide constructive use *and* put Defendant on constructive notice of Favor's claim of ownership. *See* 15 U.S.C. §§ 1057(c), 1072. Also, as a sophisticated company with sophisticated trademark counsel, Defendant very likely had actual knowledge of Favor's prior use and federal registrations.

At the very least, Defendant had actual knowledge of Favor's rights by no later than May 11, 2022, when Favor sent its demand letter. Defendant's adoption and continued use of an identical mark for related services, despite its constructive or actual knowledge, shows at least willful blindness to Favor's rights. *See Conan's*, 752 F.2d at 151 n.2. But even if Defendant were to hypothetically prove that it acted in complete good faith, that would not negate the likelihood of confusion. *See Viacom Int'l*, 891 F.3d at 195 ("If there is no evidence of intent to confuse, then this factor is

14

neutral."); *Elvis Presley*, 141 F.3d at 203 ("If the defendant acted in good faith, then this digit of confusion becomes a nonfactor[.]").

### 5. Actual consumers have already suffered numerous instances of confusion (favor seven).

Instances of actual confusion are "the best evidence of a likelihood of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009) (quoting *Smack Apparel*, 550 F.3d at 483). "[V]ery little proof of actual confusion [is] necessary to prove the likelihood of confusion." *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971). Meanwhile, "an almost overwhelming amount of proof would be necessary to refute" evidence of actual confusion. *Id.*

In just the few months since Defendant rebranded to FAVOR, Favor has already observed at least seven instances of actual confusion. *See* Bath Decl. ¶ 18 & Ex. 2 (consumer communications showing confusion). Having this many confusion instances is highly probative, especially on such a short timeframe. *See, e.g., Xtreme Lashes*, 576 F.3d at 230 (noting that even a single instance of actual confusion supports a finding of a likelihood of confusion (citing *La. World Expo., Inc. v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984)); *Roto-Rooter Corp v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975) (reversing the district court's finding of no likelihood of confusion, and holding that four instances of actual confusion was "precisely the type of error that 15 U.S.C. § 1114 [of the Lanham Act] seeks to protect against").

All this actual confusion becomes even more troubling in context. Because of the nature of the parties' business, confusion creates the added risk that consumers

will share sensitive personal medical information with the wrong company. Indeed, this has already happened at least once. *See supra* pp. 6–7 (highlighting this instance). Confusion in this context also creates the very real risk that a customer might not timely receive their prescription medications. *See id.* (same confused customer wrote to Favor instead of to Defendant: "I don't want to be off of [my medication] for too long and have to re-get used to it."); *see also Syntex Labs., Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir. 1971) (noting that trademark confusion implicating medications can result in "physical harm to the consuming public . . . through failure to receive effective medication"). Favor cannot fathom why Defendant is willing to tolerate these sorts of risks to its own customers, which will inevitably persist so long as Defendant continues to infringe Favor's marks.

Further, these confusion instances are not just a "fleeting mix-up of names." *Streamline Prods.*, 851 F.3d at 457. In each of the examples attached as evidence, the confused consumers necessarily took the time to visit Favor's website or app, find the customer support platform, and then submit a customer support request to Favor. *See* Bath Decl. ¶ 21. Thus, the confusion persisted long enough for all of this to happen, with some of the confused consumers even pointing explicitly to Defendant's rebrand. *See id.* Ex. 2. This factor points emphatically—if not conclusively—to a likelihood of confusion.

### 6. The relevant consumers are unlikely to exercise sufficient care to eliminate confusion (factor eight).

As a general matter, low prices lead to less careful consumers (and thus a greater risk of confusion). *Smack Apparel*, 550 F.3d at 474. Here, both parties offer

delivery services at low prices. Defendant for example advertises birth control medication for $0 with "most insurance" and for "as low as $6.99" without insurance. Lau Decl. Ex. 1. Defendant also delivers acne treatment products for $0 "with most insurance" or an "Annual Skin Care Membership" for $15. *Id.* Favor likewise charges between $1-10 for most deliveries. Bath Decl. ¶ 22.

These low prices generally tend to suggest a lack of consumer care and thus an increased likelihood of confusion. *See Smack Apparel*, 550 F.3d at 474. To the extent this should be partly mitigated when highly personal items like medications are at issue, that apparently has not been enough in this case, as the numerous instances of actual confusion already make clear. And regardless, "even a sophisticated purchaser can be subject to initial interest confusion." *Bd. of Regents of Hou. Sys. v. Hou. Coll of Law*, 214 F. Supp. 3d 573, 598 (S.D. Tex. 2016). On balance, this factor at least slightly weighs toward a likelihood of confusion.

## II.    Favor will suffer irreparable harm without injunctive relief.

Without a preliminary injunction, Favor will suffer irreparable harm. As amended in 2020, the Lanham Act establishes a rebuttable presumption of irreparable harm triggered by a finding of a likelihood of success on the merits. 15 U.S.C. § 1116(a). Likewise, courts in the Fifth Circuit presume irreparable harm if a likelihood of consumer confusion exists. *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) ("All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed." (citation omitted)). Because Favor is likely to succeed on the merits, *see supra* Part I, this presumption of irreparable harm applies.

17

But even *without* the presumption, the irreparable harm to Favor is clear. Defendant is using an identical mark for related services. Not only are consumers likely to confuse the parties moving forward, it has already happened numerous times. Favor obviously cannot control the quality of the Defendant's services or the products it delivers. This situation poses a substantial threat to Favor's reputation and goodwill, which money damages alone cannot remedy. *See Paulsson*, 529 F.3d at 313 (affirming a preliminary injunction where the trademark owner could not control the quality of the goods associated with its mark); *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991) ("[W]hen economic rights are especially difficult to calculate, a finding of irreparable harm may be appropriate.").

The current state of affairs also creates the risk—which again, the parties have already seen play out—that Favor will inadvertently receive highly sensitive medical information from Defendant's confused customers. This exposes Favor to serious privacy-law concerns and potential liability risks, all because of Defendant's indefensible rebranding decision.

## III.    The balance of equities favors an injunction.

The harm from Defendant's infringement far outweighs any inconvenience of an injunction. As a result of Favor's investment into its brand, Favor has accumulated substantial goodwill in its marks, which is now threatened by Defendant's actions. *See JUUL Labs, Inc. v. Gladys Smoke Shop*, Case. No. 1:20-cv-353, 2021 WL 7184950, at *8 (E.D. Tex. Sept. 7, 2021) ("The balance of the equities in denying this injunction would greatly harm [plaintiff], who has expended extensive time and energy into developing its brand. Additionally, denying the injunction would deny [plaintiff]

exclusive use of its trademark."). An injunction here will serve the "overriding goal of an injunction in a case of trademark infringement," which is to "wind the clock back" to the last date before the junior user began using the mark. *Savage Tavern, Inc. v. Signature Stag, LLC*, Case No. 5:21-CV-078-H, 2022 WL 686870 at *22 (N.D. Tex. Mar. 8, 2022).

While Defendant will no doubt emphasize the inconvenience to its business if ordered to rebrand for the second time this year, the balance of equities still easily favors an injunction. Courts regularly look past compliance costs on an infringer because "[t]rademark law and its enforcement should incentivize parties to clarify their rights in a mark *before* substantial investments are made." *Id*. Defendant here had at least constructive (and likely actual) knowledge of Favor and its marks before choosing to rebrand to an identical mark. *See supra* Part I.B.4. Defendant should bear the costs and inconveniences, however great, it could have easily avoided. *See Denbra IP Holdings, LLC v. Thornton*, 521 F.Supp.3d 677, 690 (E.D. Tex. 2021) (enjoining defendant where "[defendant] has deliberately accepted the risk of harm when she decided to use the confusingly similar [mark] at issue"). And of course, Defendant can continue freely operating its business under a different name. It just cannot continue to call itself FAVOR.

## IV.    An injunction will strongly serve the public interest.

Finally, an injunction will serve the public interest. Trademark laws exist "to protect the consuming public." *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 348 (5th Cir. 1984). As this Court has explained, "'[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act

and by enjoining the use of infringing marks.'" *Alamo Area Mutual Housing Assoc., Inc. v. Lazenby*, Case No. 5:17-CV-634-DAE, 2017 WL 7052253, at *10 (W.D. Tex. July 28, 2017) (quoting *Quantum Fitness*, 83 F. Supp. 2d at 832). So too here. And compared to many trademark disputes, these facts present an even more compelling public-interest concern because of the serious privacy risks and even potential health risks to consumers if confusion continues to occur, as discussed above.

## CONCLUSION

Favor meets all the requirements for a preliminary injunction. The Court should order Defendant to immediately cease all use of the FAVOR mark, and any other confusingly similar marks, until a final judgment is entered.

DATED: July 28, 2022                    Respectfully submitted,

/s/ *Travis R. Wimberly*
Travis R. Wimberly
State Bar No. 24075292
Alexandra H. Bistline
State Bar No. 24092137
Daniel S. Martens
State Bar No. 24116722
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, TX 78702
(512) 322-5200
(512) 322-5201 (fax)
twimberly@pirkeybarber.com
abistline@pirkeybarber.com
dmartens@pirkeybarber.com

*Counsel for Plaintiff*

20

**CERTIFICATE OF CONFERENCE UNDER LOCAL RULE CV-7(G)**

Under Local Rule CV-7(G), I certify that counsel have conferred about this motion by email on July 28, 2022. Defendant's counsel confirmed that Defendant opposes entry of a preliminary injunction.

*/s/ Travis R. Wimberly*
Travis R. Wimberly

**CERTIFICATE OF SERVICE**

I certify that on July 28, 2022, this document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to counsel of record. Because Defendant's counsel has not yet entered an appearance on the docket, I also certify that I am serving a copy of this motion by Defendant's counsel via email.

*/s/ Travis R. Wimberly*
Travis R. Wimberly
