UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NEIGHBORFAVOR INC., <br><br> Plaintiff, <br><br> v. <br><br> HEY FAVOR, INC., <br><br> Defendant. | Civil Action No. 1:22-cv-00618-LY |

# Plaintiff Favor's Motion to Dismiss Defendant's Cancellation Counterclaims

Travis R. Wimberly
State Bar No. 24075292
Alexandra H. Bistline
State Bar No. 24092137
Daniel S. Martens
State Bar No. 24116722
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, TX 78702
(512) 322-5200
(512) 322-5201 (fax)
twimberly@pirkeybarber.com
abistline@pirkeybarber.com
dmartens@pirkeybarber.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

Introduction ................................................................................................. 1
Relevant Facts ............................................................................................. 1
Legal Standard ............................................................................................ 4
Argument ..................................................................................................... 5
I.   Defendant's legal misconstruction of use "in commerce" defeats its counterclaims for cancellation as a matter of law. ......... 5
II.  Defendant fails to adequately plead a "fraud on the PTO" theory for cancellation. ............................................................... 10
    A.  Defendant fails to plausibly allege the elements of fraud on the PTO. ............................................................................ 11
    B.  Defendant fails to plead fraud with the requisite particularity under Rule 9(b). ................................................. 13
Conclusion ................................................................................................. 14
Certificate of Service ................................................................................ 15

## INTRODUCTION

Defendant brings four legally deficient counterclaims, each insufficient on the face of Defendant's pleadings. The counterclaims seek cancellation of federal trademark registrations owned by Plaintiff NeighborFavor Inc. ("Favor")—not on any serious legal theory for cancellation, but solely because Favor "only" provides its delivery services within Texas at present. According to Defendant, providing services in only one state means a company lacks use "in commerce" and thus cannot federally register its marks.

That is not the law. Binding Fifth Circuit precedent forecloses Defendant's position, as should "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Even accepting only the facts alleged and admitted by Defendant, it is legally implausible and borderline frivolous to claim that Favor's business activities do not meet the very low threshold of commerce regulatable by Congress. Defendant's counterclaims fail as a matter of law and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## RELEVANT FACTS[1]

This trademark lawsuit concerns the parties' respective use of the mark FAVOR. As admitted by Defendant, Plaintiff Favor provides delivery services in Texas through a website and mobile application called FAVOR. ECF No. 19 p.11 ("Counterclaims") ¶¶ 11–12. Defendant admits that Favor has use in Texas since at

---

[1] For the limited purpose of this motion, Favor cites to and accepts (as it must) the well-pleaded factual allegations in Defendant's answer and counterclaims.

1

least January 2017. *Id.* ¶¶ 11 & 24.² Defendant admits that Favor markets its services on its publicly accessible website and on social media pages totaling—as shown in Defendant's own exhibits—more than 160,000 followers. *Id.* ¶ 13 & Counterclaims Exs. C–F. It also admits that Favor advertises its services as being available in more than 50 cities and neighborhoods all across Texas. *See id.* ¶ 14 & Counterclaims Ex. E. Favor has also alleged—and Defendant does not affirmatively deny—that Favor has received media coverage from national outlets including *Forbes*, *Wired*, and CNBC, the existence of which is a judicially noticeable fact not subject to reasonable dispute. *See* Compl. ¶ 11; *see also infra* pp. 8–9 & n.8.

Defendant previously operated under the mark THE PILL CLUB. Counterclaims ¶ 7. But in late March 2022, Defendant rebranded to FAVOR, despite that mark already being in use and federally registered by Favor. *Id.* ¶ 8. Favor sent Defendant a cease-and-desist letter citing two of its federal registrations for FAVOR and demanding that Defendant cease use. ECF No. 19 p.1 ("Answer") ¶ 21. Defendant refused, claiming in response that there would be no likelihood of confusion between the parties' use of the identical mark FAVOR. Answer ¶ 22.

On August 11, 2022, Defendant filed four petitions in the U.S. Patent and Trademark Office (PTO)'s Trademark Trial and Appeal Board to cancel four of Favor's federal registrations for its FAVOR Marks.³ Defendant then brought

---

² Favor actually has much earlier use—since at least November 11, 2012, *see* Compl. ¶ 8—but the difference in dates does not affect this motion and the Court can accept Defendant's January 2017 date for purposes here.

³ The Board has since suspended these cancellation actions pending the final disposition of this lawsuit.

essentially the same cancellation claims as its counterclaims in this action. *See generally* Counterclaims. Defendant's four counterclaims thus ask the Court to order cancellation of Favor's registrations for these four FAVOR Marks, respectively:

- FAVOR, Reg. No. 4,424,908 (first counterclaim)[4]

- FAVOR, Reg. No. 6,001,531 (second counterclaim)

- FAVOR RUNNER, Reg. No. 6,633,048 (third counterclaim)[5]

- FAVOR DELIVERY, Reg. No. 6,633,049 (fourth counterclaim)[6]

Each of Defendant's counterclaims rests on the same basic (and legally meritless) premise: that because Favor's delivery services are currently available only in Texas, Favor supposedly does not use the FAVOR Marks "in commerce." *See* Counterclaims ¶¶ 11–15, 17, 24.

Relying on that misinterpretation of the law, Defendant claims that because Favor's use is supposedly not "in commerce," Favor's federal registrations are either *void ab initio* or abandoned under 15 U.S.C. § 1127. *Id.* ¶¶ 26, 39, 48, and 57. Defendant then extends this same reasoning to concoct a theory of "fraud," alleging

---

[4] Defendant's first counterclaim as pleaded seeks to cancel Reg. No. 4,242,901 for RENEGADE MOTORCYCLES, owned by a third party. Counterclaims ¶¶ 25–33. Favor will assume for the purposes of arguing this motion that Defendant intended to identify Reg. No, 4,424,908 for FAVOR.

[5] Defendant's pleading references another irrelevant third-party registration, Reg. No. 6,663,048, for the mark LAUNS. Counterclaims ¶¶ 43–51. Favor presumes Defendant intended to reference Reg. No. 6,633,048 for FAVOR RUNNER.

[6] Defendant's pleading again references an irrelevant third-party registration: Reg. No. 6,663,049 for MZIMZI CAPITAL and Design. Counterclaims ¶¶ 52–60. Favor presumes Defendant intended to reference Reg. No. 6,633,049 for FAVOR DELIVERY.

that Favor defrauded the PTO by claiming that it uses its FAVOR Marks in commerce. *Id.* ¶¶ 27, 35, 44, and 53.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the claimant must "includ[e] factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). In other words, the claimant must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *KIBO Software Inc. v. Pink Coconut Boutique, LLC*, Case No. 1:17-CV-1196-RP, 2018 WL 7286482, at *1 (W.D. Tex. Nov. 19, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This plausibility requirement is "context-specific" and calls on the Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007) (reversing and ordering dismissal under Rule 12(b)(6) where the allegations "failed *in toto* to render plaintiffs' entitlement to relief plausible").

In reviewing a motion to dismiss, the Court generally limits itself to the contents of the pleadings and any documents attached. *KIBO*, 2018 WL 7286482, at *1. However, the Court may also consider judicially noticeable facts in deciding a motion to dismiss. *Basic Capital Management, Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) ("Rule [of Evidence] 201(d) expressly provides that a court may judicial notice at *any* stage in the proceeding, and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion.").

## ARGUMENT

Defendant's counterclaims for cancellation fail as a matter of law and should be dismissed. Defendant offers a handful of theories for cancelling Favor's PTO registrations—abandonment (first counterclaim), applications *void ab initio* (second through fourth counterclaims), and fraud (all counterclaims)—but in the end, all of these theories rest on the same glaring legal flaw. Specifically, Defendant misconstrues the legal requirement of use "in commerce" under the Lanham Act.

Defendant's allegation of supposed "fraud" on the PTO also warrants dismissal for additional reasons. Defendant fails to meet the heightened pleading standard for fraud claims under Federal Rule of Civil Procedure 9(b), and also fails to adequately allege the elements of a fraud claim.

### I. Defendant's legal misconstruction of use "in commerce" defeats its counterclaims for cancellation as a matter of law.

Defendant contends that Favor does not have the required use "in commerce" to maintain federal trademark registrations because Favor currently delivers only to Texas addresses. According to Defendant, the two legal consequences of this supposedly insufficient use are (1) that Favor has abandoned its right to maintain Reg. No. 4,424,908 and, (2) that Favor never had a right to maintain Reg. Nos. 6,001,531, 6,633,048, and 6,633,049 to begin with.

Defendant's position flouts the well-established legal definition of use "in commerce." Under the Lanham Act, "commerce" means "*all* commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127 (emphasis added). And it is "beyond question that Congress may regulate *intrastate* activities which

5

substantially affect interstate commerce." *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 488–489 (5th Cir. 1971) (emphasis added). In fact, "even seemingly *de minimis* intrastate activities can influence interstate commerce, be regulated by Congress, and thus count as uses in commerce for purposes of the Lanham Act." *Perry v. H.J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 474 (5th Cir. 2021).[7]

Eschewing this well-established law, Defendant's counterclaims all rest on the flawed legal proposition that use "in commerce" excludes businesses who provide their services only within one state. *See, e.g.,* Counterclaims ¶ 17 ("NeighborFavor has not used the FAVOR mark in commerce . . . since at least as early as January 2017, when it withdrew its local restaurant and store delivery operations from states other than Texas, where it now operates exclusively."); *id.* ¶ 24 ("NeighborFavor ceased use of the [FAVOR Marks] in commerce in approximately January 2017 when it withdrew its [services] from states other than Texas, where it now operates exclusively.").

The Fifth Circuit has firmly rejected this legal position. *See Perry*, 994 F.3d at 474 ("Because one need not direct goods across state lines for Congress to regulate the activity under the Commerce Clause, there is likewise no such per se condition for satisfying the Lanham Act's 'use in commerce' requirement."); *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 343 n.5 (5th Cir. 1984) (concluding that

---

[7] Favor does not concede that it conducts business only intrastate, but even accepting that allegation as true for purposes here, Defendant's counterclaim*s still* fail as a matter of law under the well-established meaning of use "in commerce."

6

the Lanham Act's definition of commerce "[w]ithout [a] doubt" extends to defendant's activities confined to Louisiana). Likewise, district courts within this Circuit have consistently found "use in commerce" from use limited to a single state. *See, e.g., PC Mailing Services, Inc. v. Gonzales*, Case No. SA-07-CA-853-OG, 2008 WL 11334110, at *4 (W.D. Tex. Apr. 14, 2008) (finding use in commerce based on intrastate activity); *T&L Comput. Sys., Inc. v. Stanford*, 155 F. Supp. 2d 815, 819 (N.D. Tex. 2011) (finding use in commerce even where defendants' activities "have not traveled across state lines").

Defendant's misconstruction of the law leads it to assert and admit several facts about Favor's business that, ironically, only confirm Favor's use in commerce. For example, Defendant admits that Favor "provides restaurant and store delivery services . . . within the state of Texas" and that Favor has done so since at least January 2017. Counterclaims ¶ 11. Defendant also admits that Favor previously offered its delivery services in several other states besides Texas, but exited those out-of-state markets around January 2017. *See id.* & Counterclaims Ex. B. Defendant's own exhibit indicates that, over five and a half years ago in January 2017, Favor already had "$60 million in sales and ha[d] delivered more than 2.5 million orders." *Id.* Ex. B. Defendant also admits that Favor uses and advertises its FAVOR Marks on a publicly accessible website and mobile application, and that Favor currently advertises its services across numerous Texas cities throughout the state. Counterclaims ¶¶ 12–14 & Exs. C–F. Courts within the Fifth Circuit have held that where trademark use appeared in "advertisements that reach other states," the

7

marks "are deemed to be used in commerce." *Finger Furniture Co., Inc. v. Mattress Firm, Inc.*, No. H-05-0299, 2005 WL 1606934, at *3 (S.D. Tex. July 1, 2005). Defendant correctly does not deny—and its own exhibits indeed confirm—that Favor's marks appear in advertisements reaching other states. *See, e.g.*, Counterclaims Exs. C (screenshot of Favor's Instagram page), D (screenshots of Favor's nationally accessible website), and Ex. E (same).

What's more, Defendant fails to affirmatively deny Favor's allegation that it has received media coverage in national publications like *Forbes*, *Wired*, and CNBC. Defendant instead professes a denial of this fact based on supposed "lack of information or belief." *See* Compl. ¶ 11; Answer ¶ 11. Of course, media coverage from these sorts of outlets is publicly and broadly available, so Defendant's claim to lack "information or belief" means only that Defendant has not bothered to look for it. This apparent failure calls into question whether Defendant fulfilled its duty to reasonably investigate the counterclaims before bringing them. *See* Fed. R. Civ. P. 11; *City of El Paso, Tex. v. City of Socorro, Tex.*, 917 F.2d 7, 8 (5th Cir. 1990) (recognizing that Rule 11 "imposes a duty of reasonable inquiry into the law" on the attorney signing a pleading or other document). And Defendant's avoidance notwithstanding, the existence of publicly available media coverage is judicially noticeable and can be considered by the Court on a motion to dismiss. *See Basic Capital*, 976 F.3d at 589;

8

*Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354 n.3 (S.D.N.Y. 1998) ("This Court also takes judicial notice of the widespread newspaper coverage . . . .").[8]

Put simply, it is legally implausible under binding Fifth Circuit law for Defendant to alleges that Favor lacks use "in commerce." The Fifth Circuit in *Perry* reversed a finding that the defendant was not using its mark in commerce based on only *$170* in sales—exclusively out of a motel lobby in rural Louisiana and never sold online—over a ten-year period. 994 F.3d at 468. This Court has likewise found sufficient use in commerce from relatively miniscule commercial activity. *See, e.g.*, *Picturecode, LLC v. Digital Ninja, LLC*, Case No. A-10-CA-188-LY, 2010 WL 11601563, at *2 (W.D. Tex. Sept. 7, 2010) (rejecting argument that trademark registration was *void ab initio* based on 13 total $1 sales over a four-year period with "primarily" word-of-mouth marketing through defendant's personal contacts); *PC Mailing Services*, 2008 WL 11334110, at *4 (rejecting "use in commerce" argument even where defendant solicited business to just two intrastate entities but did not complete a sale). By Defendant's own admissions in its pleadings and exhibits, *see supra* pp. 1–2, 7–8, Favor's operations dwarf the commercial activity examined in *Picturecode* and *PC Mailing Services* by orders of magnitude.

Defendant's claim that Favor "abandoned all rights" in Reg. No. 4,424,908 for FAVOR (counterclaim one) fails for the similar reasons. Counterclaims ¶ 26.

---

[8] Of course, Favor does not ask the Court at this stage to accept or consider any facts stated within this national media coverage. Rather, it is the mere *existence* of the publicly available media coverage—a judicially noticeable fact not subject to reasonable dispute, *see* Fed. R. Evid. 201(b)—that further highlights the legal implausibility of Defendant's claim that Favor lacks use "in commerce."

9

"Abandonment generally requires a *complete* discontinuance of the trademark's use and even minor or sporadic good faith uses of a mark will defeat the defense of abandonment." *Perry*, 994 F.3d at 475 (emphasis added) (citing *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 938 (9th Cir. 2006) ("Even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith.")). Defendant makes no allegation—nor could it—that Favor has ceased doing business under its FAVOR Marks.

Finally, Favor notes the highly troubling implications of Defendant's overall position. If Defendant's cancellation counterclaims were legally plausible, *every* business offering goods or services in only one state—no matter how expansive those operations—would be at risk of having its federal trademark registrations subject to cancellation. That has never been the law. Defendant and its highly sophisticated counsel surely know this.

## II. Defendant fails to adequately plead a "fraud on the PTO" theory for cancellation.

Defendant's fraud allegations are hardly separable from its allegations of abandonment and lack of use "in commerce," discussed above. The thrust of Defendant's fraud theory is that, because use in Texas alone is supposedly not use "in commerce"—a flatly incorrect legal premise, *see supra* Part I—Favor intentionally defrauded the PTO by claiming use in commerce in various PTO filings. *See* Counterclaims ¶¶ 27–32 & Ex. G; *id.* ¶¶ 35–42 & Ex. H; *id.* ¶¶ 44–51 & Ex. I; *id.* ¶¶ 53–60 & Ex. J. This allegation of "fraud" fails as a matter of law. Defendant also fails to satisfy the special pleading standards for fraud claims under Rule 9(b).

### A. Defendant fails to plausibly allege the elements of fraud on the PTO.

To plead fraudulent procurement of a PTO registration, a party must plead all of the following elements: (1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter), (3) the intention to induce action or refrain from action in reliance on the misrepresentation, (4) reasonable reliance on the misrepresentation, and (5) damages proximately resulting from such reliance. *Nursery Decals and More, Inc. v. Neat Print, Inc.*, 568 F. Supp. 3d 681, 700 (N.D. Tex. 2021). The second and third elements, taken together, require the claimant to plead that the registrant made the false statements "with intent to deceive the USPTO." *Id.* at 700–01, *citing Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir. 1993).

Defendant fails to plausibly allege these required elements. In fact, Defendant does not even plausibly allege the *first* element. Defendant's sole theory for a supposedly "false" statement is that offering services in only one state (here, Texas) does not meet the low threshold for use in commerce, which is incorrect as a matter of law. *See supra* Part I.

Even if this legal point were debatable—and it is not—Defendant "must identify a *deliberate* attempt by the registrant to mislead the PTO." *Burnscraft Mfg. Corp. v. Nat'l Const. Rentals, Inc.*, Case No. H-13-2769, 2014 WL 1386300, at *4 (S.D. Tex. Apr. 9, 2014). Making a false statement—which Favor did not—still is "not sufficient to cancel a [registration]." *Id.*, *citing L.D. Kichler Co. v. Davoil Inc.*, 192 F.3d 1349, 1351 (Fed. Cir. 1999). Defendant pleads nothing from which the Court

could plausibly conclude that Favor knowingly made any false representations with the requisite intent to deceive the PTO. *See Dennis Pierce, Inc. v. Pierce*, 735 F. App'x 144, 146 (5th Cir. 2018) (rejecting fraud claim where intent elements were based only on "a tenuous inference" the party's knowledge). Defendant pleads no relevant facts on these issues at all, beyond a threadbare recitation that Favor "knew" its trademark filings were false because Favor operated in Texas at the time of the filing. Counterclaims ¶¶ 28–29, 36–37, 45–46, and 54–55. That is nowhere near enough to make out a plausible allegation of fraud. *See, e.g.*, *Yeti Coolers, LLC v. Bapex Int'l, LLC*, No. 1:19-CV-783-RP, 2020 WL 2114385, at *2 (W.D. Tex. May 4, 2020) ("Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis.").[9]

Defendant also fails to plausibly plead the fourth and fifth elements of fraud. Defendant alleges that it is "harmed by the U.S. Patent & Trademark Office's reliance on [Favor's] false statement, as [Favor] relies on its ill-gotten rights in" the FAVOR Marks "to make allegations against" Defendant.[10] Counterclaims ¶¶ 31, 40, 49, 58.

---

[9] While unnecessary to the dismissal analysis, the PTO's treatment of Favor's filings reinforces Defendant's failure to plausibly allege fraud. On at least four separate occasions, the PTO found Favor's specimens sufficient to show use in commerce. *See* Counterclaims Exs. G, H, I, and J. As Defendant's pleadings show, the PTO has never refused Favor's specimens on a non-use ground. *See id.* And this is true even though the PTO's procedures *require* refusal if the "specimen indicates that the goods have not been 'sold or transported in commerce.'" Trademark Manual of Examining Procedure (TMEP) § 904.

[10] This particular allegation also suffers from an even more basic problem. Favor does not *need* its federal registrations to "make allegations against" Defendant. Favor could still assert (and has in fact asserted) common law trademark infringement claims and federal unfair competition claims under 15 U.S.C. § 1125(a). *See* Compl. ¶¶ 43–53. None of these claims require PTO registrations.

12

These allegations are nothing more than "threadbare recitals." *Iqbal*, 556 U.S. at 679. Defendant points to no facts demonstrating that the PTO relied on a false representation in granting Favor its registrations, nor that the PTO's issuance of the registrations has caused any damage to Defendant.

Courts have not hesitated to grant Rule 12(b)(6) dismissal of PTO cancellation counterclaims where, as here, the counterclaimant alleged no legally viable ground for cancellation. These decisions include several dismissing counterclaims that inadequately alleged fraud on the PTO. *E.g., N. Am. Olive Oil Assoc. v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 227–28 (E.D.N.Y. 2020); *Teeter-Totter, LLC v. Palm Bay Int'l, LLC*, 344 F. Supp. 3d 1100, 1108–10 (N.D. Cal. 2018); *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, 223 F. Supp. 3d 207, 212–13 (D. Del. 2016); *AirWair Int'l Ltd v. Schultz*, 84 F. Supp. 3d 943, 951–55 (N.D. Cal. 2015); *Hana Financial, Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1234–38 (C.D. Cal. 2007). This case warrants the same result.

### B. Defendant fails to plead fraud with the requisite particularity under Rule 9(b).

Defendant's fraud claims also fail to meet the heightened pleading standard prescribed by the federal rules. A party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d

13

719, 724 (5th Cir. 2003). This includes an obligation to specific "facts from which an inference of scienter could be drawn." *Burnscraft*, 2014 WL 1386300, at *4.

For the same reasons outlined above, Defendant's counterclaims plead no such facts with the required specificity. Defendant has done nothing more than misconstrue what "commerce" legally means under the Lanham Act, 15 U.S.C. § 1127, then used its own legal misconstruction of that term to concoct a hollow and non-specific theory of fraud against Favor. Either as a standalone basis for dismissal or in combination with the points above, the Court should dismiss Defendant's fraud allegations as inadequately pleaded under Rule 9(b).

## CONCLUSION

Defendant's counterclaims to cancel Favor's trademark registrations rest on basic legal errors about the requirement of use "in commerce" under the Lanham Act. Based on Defendant's own allegations and admissions, Favor's use easily and indisputably meets the low legal threshold of being "in commerce." Defendant fails to plausibly allege otherwise. Defendant's fraud claims fail for the same reasons, and also because Defendant fails to plead fraud with the requisite particularity under Rule 9(b).

There is no reason to believe that amendment would cure these fundamental legal defects. The counterclaims should be dismissed under Rule 12(b)(6) without leave to amend.

DATED: September 9, 2022	Respectfully submitted,

/s/ *Travis R. Wimberly*
Travis R. Wimberly
State Bar No. 24075292
Alexandra H. Bistline
State Bar No. 24092137
Daniel S. Martens
State Bar No. 24116722
PIRKEY BARBER PLLC
1801 East 6th St., Suite 300
Austin, TX 78702
(512) 322-5200
twimberly@pirkeybarber.com
abistline@pirkeybarber.com
dmartens@pirkeybarber.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on September 9, 2022, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to Defendant's counsel of record.

/s/ *Travis R. Wimberly*
Travis R. Wimberly