FILED

JAN 6 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

NEIGHBORFAVOR INC.,              §
            PLAINTIFF,           §
                                 §
V.                               §     CAUSE NO. 1:22-CV-618-LY
                                 §
HEY FAVOR, INC.,                 §
            DEFENDANT.           §

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

Before the court are Plaintiff NeighborFavor, Inc.'s ("NeighborFavor") Motion for Preliminary Injunction (Doc. #6), NeighborFavor's Motion to Dismiss Defendant's Cancellation Counterclaims (Doc. #20), and all related briefing. The court conducted a hearing on the motions on November 14, 2022. The parties completed presentation of evidence and argument on November 15, 2022. NeighborFavor appeared in person through Jag Bath, Chief Executive Officer, and through counsel. Defendant Hey Favor, Inc. ("Hey Favor") appeared in person through Liz Meyerdirk, Chief Executive Officer, and through counsel. Having considered the motions, briefing, exhibits, arguments of counsel, and entire record, the court renders the following order granting the motion for preliminary injunction and motion to dismiss.

## I.     BACKGROUND

NeighborFavor operates "FAVOR," a mobile application and website for on-demand delivery services. FAVOR's platform enables customers to browse, order, pay for, track, pick up, and transport various goods from local restaurants and stores to their homes and offices. Supermarket chain H-E-B Grocery Company, LP ("H-E-B") acquired FAVOR in 2018 and uses FAVOR's delivery network for certain grocery-delivery services.

NeighborFavor has used the mark and name FAVOR since at least as early as November 11, 2012. NeighborFavor owns registrations with the U.S. Patent & Trademark Office ("PTO") for the primary FAVOR mark and related marks, including U.S. Registration Nos. 4,424,908, 6,001,531, 6,633,048, and 6,633,049 (the "FAVOR marks").

Hey Favor operates a mobile application and website previously called "THE PILL CLUB," which offers telehealth services, birth-control medication, emergency contraceptives, and skin-care products. The majority of Hey Favor's customers purchase the company's birth-control subscriptions, which Hey Favor delivers directly to customers' homes. In March of 2022, Hey Favor publicly rebranded from "THE PILL CLUB" to "FAVOR." Hey Favor applied to register FAVOR with the PTO on December 6, 2021.

NeighborFavor sues Hey Favor for trademark infringement and counterfeiting, unfair competition and false designation, and unjust enrichment. Hey Favor brings four counterclaims against NeighborFavor that seek to cancel NeighborFavor's PTO registrations for the FAVOR marks. *See* 15 U.S.C. § 1119. NeighborFavor moves for a preliminary injunction ordering Hey Favor to cease all use of the FAVOR mark and similarly confusing marks. NeighborFavor also moves to dismiss Hey Favor's cancellation counterclaims. The court will first address NeighborFavor's motion to dismiss.

## II.    MOTION TO DISMISS HEY FAVOR'S CANCELLATION COUNTERCLAIMS

Hey Favor brings four counterclaims against NeighborFavor, requesting that the court direct the PTO to cancel NeighborFavor's FAVOR mark registrations. *See* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may . . . order the cancelation of registrations"). Hey Favor alleges that because NeighborFavor ceased operating outside Texas in January of 2017, NeighborFavor fraudulently attested to the PTO that the marks are "in use in commerce or in

connection with the goods/services." Hey Favor argues that because NeighborFavor operates only in Texas, the FAVOR mark registrations are *void ab initio* or otherwise abandoned. NeighborFavor moves to dismiss Hey Favor's counterclaims, arguing that Hey Favor fails to state a claim because NeighborFavor's business activities meet the standard of "in commerce" as understood under the Lanham Act. *See* 15 U.S.C. § 1127.

### Standard of Review

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a 12(b)(6) motion, a court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### Analysis

The crux of the parties' dispute for the motion to dismiss is whether NeighborFavor operates "in commerce" such that its FAVOR marks may receive federal trademark protection under the Lanham Act. *See* 15 U.S.C. § 1051 et seq. The Lanham Act defines "commerce" as co-extensive with the commerce clause of the Constitution. 15 U.S.C. § 1127 ("The word 'commerce'

means all commerce which may lawfully be regulated by Congress."). "Use in commerce" for trademarks means a sale or transportation of the trademarked goods in United States interstate commerce or in United States commerce with foreign nations. *See id.*

In 2016, the Federal Circuit rejected the PTO's prior position that an applicant satisfies the "use in commerce" requirement only by sending trademarked goods across a state line. *Christian Faith Fellowship Church v. adidas AG*, 841 F.3d 986, 995 (Fed. Cir. 2016) ("Because one need not direct goods across state lines for Congress to regulate the activity under the Commerce Clause, there is likewise no such *per se* condition for satisfying the Lanham Act's 'use in commerce' requirement."). *Christian Faith* made clear that intrastate business activities can receive trademark protection under the Lanham Act. *Id.* at 992 (intrastate sale of hats from church bookstore satisfied Lanham Act's "use in commerce" requirement when one customer resided out of state).

The Fifth Circuit also adopted this approach, holding that "seemingly *de minimis* intrastate activities can influence interstate commerce, be regulated by Congress, and thus count as uses in commerce for purposes of the Lanham Act." *Perry v. H. J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 474 (5th Cir. 2021). In *Perry*, plaintiff Dennis Perry made a blend of mayonnaise and ketchup called "Metchup" and sold the product from the lobby of a nine-room motel and an adjacent used-car dealership in Lacombe, Louisiana. *Id.* at 468. Perry had registered Metchup as an incontestable trademark. *Id.* Perry sued Heinz for its use of the words "Mayochup" and "Metchup," alleging trademark infringement. *Id.* at 469. Heinz brought cancellation counterclaims against Perry, arguing in part that Perry's intrastate sale of Metchup did not satisfy the Lanham Act's "use in commerce" requirement. *Id.* at 470. The district court granted summary judgment on Heinz's counterclaims because Perry "failed to produce any evidence to show any sales of [the products] outside of Louisiana or to non-Louisiana residents." *Id.* at 474. Citing *Christian Faith*, the circuit

4

vacated the district court's summary-judgment ruling, holding that the district court misplaced the burden of proof. *Id.* The *Perry* court held that Heinz, as the party seeking to cancel a federal trademark registration, has the burden to provide "strict proof" showing the Perry did not sell Metchup to out-of-state motel guests. *Id.*

Considering the low bar for what constitutes "use in commerce" under the Lanham Act, the court finds that Hey Favor has not plausibly alleged any fact demonstrating that NeighborFavor's FAVOR business is not "use[d] in commerce." Hey Favor's pleadings and exhibits show that in January of 2017, NeighborFavor had generated $60 million in sales and had delivered more than 2.5 million orders. Hey Favor's pleadings also allege that NeighborFavor uses and advertises its FAVOR marks in many cities across Texas. Further, Hey Favor's pleadings allege that before January of 2017, NeighborFavor offered its services outside of Texas. Hey Favor argues that it is "highly plausible" that no interstate traveler has ever used NeighborFavor's services. The court disagrees. Even when drawing every reasonable inference for Hey Favor, the court finds that Hey Favor fails to plausibly allege any fact showing that NeighborFavor delivered millions of orders exclusively to in-state customers. *See Perry*, 994 F.3d at 475 (party seeking cancellation bears burden in showing non-existence of *de minimis* intrastate activities influencing interstate commerce).

In a separate line of argument, Hey Favor attempts to distinguish the "use in commerce" requirement for trademark-registration requirements from the "use in commerce" requirement for trademark-infringement actions. *See* 15 U.S.C. §§ 1114, 1127. Hey Favor's argument falls flat because both the *Christian Church* and *Perry* cases involve the "use in commerce" requirement under section 1127 of the Lanham Act, which Hey Favor asserts as the relevant section. *See*

*Christian Faith*, 841 F.3d at 992 (intrastate sale of two hats to one out-of-state customer satisfied Lanham Act's "use in commerce" trademark-registration requirement); *Perry*, 994 F.3d at 472.

After accepting all Hey Favor's pleaded facts as true and drawing all reasonable inferences in its favor, the court concludes that Hey Favor fails to state a claim upon which relief can be granted for the four cancellation counterclaims. The court will grant NeighborFavor's motion to dismiss and dismiss Hey Favor's counterclaims with prejudice.

### III.   MOTION FOR PRELIMINARY INJUNCTION

The court next turns to NeighborFavor's motion for preliminary injunction, which requests that the court order Hey Favor to cease all use of the primary FAVOR mark and other confusingly similar marks until final judgment is rendered. *See* 15 U.S.C. § 1116 (authorizing courts to issue injunctive relief in trademark disputes).

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, a district court may issue a preliminary injunction to protect a plaintiff from irreparable injury and to preserve judicial power to render a decision after trial on the merits. *See Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). For a court to issue a preliminary injunction, the moving party must establish by a preponderance of the evidence that: "(1) it is substantially likely to succeed on the merits of its claim; (2) it will suffer irreparable injury in the absence of injunctive relief; (3) the balance of the equities tips in its favor; and (4) the public interest is served by the injunction." *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 528 (5th Cir. 2020). Because "[a] preliminary injunction is an 'extraordinary remedy,'" a preliminary injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009).

### 1. *Likelihood of success on the merits*

The Lanham Act allows the owner of a mark used in interstate commerce to bring infringement actions in federal court. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *see also* 15 U.S.C. § 1114(1)(a). "To prevail on [a] claim of trademark infringement under the Lanham Act, [the claimant] must show two elements: (1) it possesses a legally protectable trademark and (2) [the alleged infringer's] use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

### A. NeighborFavor demonstrates likelihood of success on the merits as to whether it owns a legally protectable trademark.

NeighborFavor provides documentation from the PTO showing registrations for the four FAVOR marks. Bath, NeighborFavor's CEO, testified that NeighborFavor has used the FAVOR mark in United States commerce continuously starting as early as November 11, 2012. Hey Favor rebranded under the FAVOR mark in March of 2022. NeighborFavor asserts that it owns protectable and senior trademark rights in the FAVOR marks.

Hey Favor argues that because NeighborFavor ceased offering deliveries outside of Texas in January of 2017, NeighborFavor does not use the FAVOR marks in United States commerce and therefore does not own a legally protectable trademark. However, as the court discussed in analyzing NeighborFavor's motion to dismiss, NeighborFavor's business activities surrounding the FAVOR marks meet the standard of "in commerce" as understood under the Lanham Act. *See* 15 U.S.C. § 1127. Because NeighborFavor demonstrates that it owns federal registrations in the FAVOR marks and its use of the mark is senior to that of Hey Favor's, the court concludes that

NeighborFavor has established likelihood of success on the merits on the first requirement of a federal trademark-infringement claim.

**B. NeighborFavor demonstrates likelihood of success on the merits on whether Hey Favor's use of the FAVOR mark "creates a likelihood of confusion as to source, affiliation, or sponsorship."**

To evaluate the likelihood of confusion under the second requirement for a federal trademark-infringement claim, the court turns to eight factors, known as the "digits of confusion": "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 427 (5th Cir. 2021) (quoting *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009)). This list is non-exhaustive, and the digits are "fact-specific and flexible." *Id.* "These 'digits' are mere guideposts on the road to a finding of confusion; they are not 'an exact calculus' for reaching such a finding." *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo ISD*, 33 F.4th 747, 750 (5th Cir. 2022). Two of the eight digits possess "particular prominence." The sixth—bad intent—is "not necessary" but "may alone be sufficient to justify an inference that there is a likelihood of confusion." *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020). Likewise, the seventh—actual confusion—constitutes the "best evidence of a likelihood of confusion." *Id.* The parties contest each of the eight digits.

*i.    Type of trademark (strength)*

"The type-of-mark digit refers to the strength of a mark: Strong marks receive 'the widest ambit of protection,' and weak marks do not." *Id.* To determine the strength of a mark, the court must examine (1) where the mark falls on a "spectrum of categories" (generic, descriptive, suggestive, arbitrary, or fanciful); and (2) the standing of the mark in the marketplace. *Id.* at 89–

90. An "arbitrary" mark "bears no relationship to the products or services to which [it] is applied." *Id.* at 291. A "suggestive" mark "require[s] the consumer to exercise the imagination in order to draw a conclusion as to the nature of the good." *Id.*

The parties agree that the applicable category for the FAVOR mark is, at a minimum, "suggestive." In briefing, NeighborFavor argues that the court should classify the FAVOR as "arbitrary" or "on the strong end of suggestive." At the motions hearing, NeighborFavor indicated that it "accepts" the "suggestive" classification. Regardless of whether the court classifies the mark as "suggestive" or "arbitrary," both classifications indicate that the FAVOR mark is "inherently distinctive." *Id.* at 290. However, the distinctiveness of a "suggestive" mark does not necessarily reflect its strength, and the court may consider other factors such as "recognition in the market" and "third-party use" when determining the mark's strength. *Id.* at 290–91. NeighborFavor points to the commercial success of its services under the FAVOR mark, along with its roughly 10 years of use in the market. Bath testified that NeighborFavor has completed over 60 million deliveries and generated over 1.1 billion dollars in gross sales during its last decade of operation. The court agrees that NeighborFavor's commercial success demonstrates strong recognition in the market. On the other hand, Hey Favor argues that the FAVOR mark's strength is undermined by the fact that "dozens of companies" have registered similar marks. However, Hey Favor does not indicate whether these instances of third-party use are current, nor does Hey Favor provide sufficient context for the marketplace or geographical considerations surrounding these third-party uses. Having considered the evidence, the court concludes that the type-of-mark digit weighs in favor of a finding of likelihood of success on the issue of confusion.

ii.     *Similarity between the marks*

Assessing the similarity of the marks "requires consideration of the marks' appearance, sound, and meaning." *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 193 (5th Cir. 2018). Even if two marks are distinguishable, the court must ask whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association. *Id.* The court must consider the marks "in the context that a customer perceives them in the marketplace," which can include "labels, packages, or . . . advertising material directed to the goods." *Future Proof*, 982 F.3d at 295.

NeighborFavor argues that Hey Favor uses the exact same mark and asserts that any differences in stylization or presentation are trivial. Hey Favor argues that its use of the mark involves "significant distinguishing differences in the design of the parties' respective websites and mobile app." As an example, Hey Favor notes that NeighborFavor displays its FAVOR mark with images of plated food, while Hey Favor displays the mark with pictures of women, birth-control pills, and personal-care products. Hey Favor also argues that NeighborFavor frequently uses a bowtie image with the FAVOR mark, whereas Hey Favor uses "only the 'F' letter capitalized and without any logo."

The court first looks to the marks "in the context that the consumer perceives them in the marketplace," which includes the parties' respective apps and websites. *See Future Proof*, 982 F.3d at 295. Both apps use the short name "Favor," but screenshots captured on July 28, 2022, from Apple's App Store show that NeighborFavor's full app title is "Favor: Local Delivery Service" and Hey Favor's is "Favor (The Pill Club)." Both the apps and the websites, however, predominately rely on the shortened "FAVOR" name, which, as NeighborFavor points out, is identical. While the imagery on the apps and websites may differ, the underlying brand name—

"FAVOR"—is the same. *See Viacom*, 891 F.3d at 193 (5th Cir. 2018) ("Logos for the two marks may differ, but the words themselves are indistinguishable and would likely confuse consumers as to the source."). The court concludes that the similarity digit weighs in favor of a finding of likelihood of success on the issue of confusion.

    *iii.*       *Similarity of the products or services*

"The more similar the products and services, the greater the likelihood of confusion." *Id.* Direct competition is not required to find a likelihood of confusion. *Professional Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 669–70 (5th Cir. 1975). Similarity can also be found when the defendant's business is one into which the plaintiff "would naturally be perceived to expand." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 202 (5th Cir. 1998).

NeighborFavor argues that this digit weighs in favor of an injunction because both parties offer delivery of consumer products, and, more specifically, both parties offer delivery of prescription medications, skin-care products, and sexual-wellness products. NeighborFavor also argues that because it delivers for H-E-B, which offers deliveries for its in-store pharmacies, a customer could "naturally perceive" that NeighborFavor has expanded into the type of business that Hey Favor offers. Conversely, Hey Favor argues that while both companies deliver consumer goods, Hey Favor sells medication directly to customers (as opposed to offering courier services for goods from other business) and operates telehealth services. Hey Favor also notes that NeighborFavor makes same-day, in-person deliveries, while Hey Favor ships medication to customers in regular intervals.

The court recognizes that Hey Favor offers services that differ from NeighborFavor's services. As an example, Hey Favor provides telehealth services, whereas NeighborFavor does not. The court also notes that NeighborFavor predominately offers same-day deliveries while Hey

Favor does not, although Bath testified that a customer could order a "custom favor" that requests delayed delivery of certain products. The court agrees with NeighborFavor, however, that there is significant overlap in the end result of both companies' services—the customer receives a requested delivery (birth-control pills, skin-care products, or sexual-wellness products) at the address of the customer's choosing. The court concludes that the similarity-of-services digit weighs slightly in favor of a finding of likelihood of success on the issue of confusion.

iv.     *Identity of the retail outlets and purchasers*

The greater the overlap between retail outlets and purchasers, the greater the likelihood of confusion. *Viacom*, 891 F.3d at 194. Dissimilarities between the predominant consumers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception. *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980).

NeighborFavor argues that the parties both sell to consumers seeking home delivery of consumer staples, including prescription medications, which increases the likelihood of confusion. Hey Favor responds that its customer base is spread nationwide, whereas NeighborFavor's customer base largely resides in Texas. Hey Favor argues that only 10% of its customers are in Texas. Hey Favor further argues that it markets to "women and people who menstruate and are interested in birth control or other women's healthcare services," whereas NeighborFavor markets to "consumers seeking same-day delivery of food and consumer staples in Texas."

Bath testified that around 57% of NeighborFavor's customers are women. Bath also testified that NeighborFavor's customer base skews towards young professionals in their 20s and 30s. Meyerdirk—Hey Favor's CEO—testified that Hey Favor predominately sells to women seeking birth-control subscriptions. Considering the significant overlap in the demographics of the consumer bases for both parties (younger, mostly women)—along with the fact that both

parties offer home delivery for their respective products—the court concludes that the identity-of-purchasers digit weighs in favor of a finding of likelihood of success on the issue of confusion.

> v.      *Identity of the advertising media used*

The greater the similarity in the parties' advertising campaigns, the greater the likelihood of confusion. *Viacom*, 891 F.3d at 195. Targeting the same class of buyers can support an inference that "the parties use similar advertising and marketing channels." *Xtreme Lashes*, 576 F.3d at 229. Courts look to the type of media advertisements that the parties use in determining similarity. *See, e.g., Exxon Corp.*, 628 F.2d at 506 ("Both parties used radio, television, newspaper ads, yellow page ads, and large signs identifying their places of business.").

NeighborFavor argues that both parties advertise online, through mobile applications, and on social-media platforms, which increases the likelihood of confusion. Hey Favor argues that online advertising is common among many industries and does not show that customers are likely to be confused. Hey Favor further argues that the parties are not competitors, so confusion is unlikely even when the parties use the same advertising channels.

The court finds that both companies use similar advertising and media channels, namely online advertising through mobile applications and social-media platforms. The parties also target similar classes of consumers—younger people seeking home delivery of consumer goods. The court concludes that the identity-of-advertising-media digit weighs in favor of a finding of likelihood of success on the issue of confusion.

> vi.     *Defendant's intent*

A junior user must avoid choosing a mark which may cause confusion with the senior user's mark. *Xtreme Lashes*, 576 F.3d at 229. However, "mere awareness of the senior user's mark" does not establish bad intent. *Future Proof*, 982 F.3d at 296. The intent inquiry "focuses

on whether the defendant intended to derive benefits from the reputation of the plaintiff." *Id.* Courts rely on evidence that a defendant "imitat[ed] ... packaging material" or "adopt[ed] similar distribution methods." *Id.*

NeighborFavor argues that Hey Favor had, at a minimum, "constructive knowledge" of NeighborFavor's use of the FAVOR mark through its four federal registrations. Hey Favor argues that it was unaware of NeighborFavor's use of the FAVOR mark "for healthcare-related services."

During the hearing, Bath testified that, in his opinion, Hey Favor's CEO was aware of NeighborFavor's use of the FAVOR mark because she worked on the "founding team" of UberEats, which launched after NeighborFavor began using the FAVOR mark for its courier services in November of 2012. Meyerdirk testified that she worked on the founding team of UberEats starting in June of 2015. However, Meyerdirk claimed that she was unaware of NeighborFavor's operations and use of the FAVOR mark. Meyerdirk testified that her work exposed her to only the "largest" and most "global" delivery players, such as Grubhub, Postmates, and DoorDash. When asked directly if she had heard of NeighborFavor's use of the FAVOR mark prior to rebranding from The Pill Club in March of 2022, Meyerdirk responded "No, I don't recall." Meyerdirk testified that Hey Favor's rebranding efforts aimed to select a name that "represent[ed] community" and created a "feeling of warmth." Meyerdirk further testified that NeighborFavor's use of the FAVOR mark did not factor in to Hey Favor's decision to rebrand.

Assuming without deciding that Meyerdirk was aware of NeighborFavor's use of the FAVOR mark before the rebrand, her awareness nonetheless does not establish bad intent. *See Future Proof*, 982 F.3d at 296. The record of evidence does not indicate that Hey Favor rebranded under the FAVOR mark to derive benefits from NeighborFavor's reputation. The record likewise does not show that Hey Favor made efforts to imitate NeighborFavor's materials or otherwise

adopt similar distribution efforts for the purposes deriving benefits from NeighborFavor's reputation.  The court concludes that the intent digit does not weigh in favor of a finding of likelihood of success on the issue of confusion.

    vii.    *Evidence of actual confusion*

The seventh digit, evidence of actual confusion, is the "best evidence of a likelihood of confusion." *Viacom*, 891 F.3d at 197.  To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion or consumer surveys. *Id.*  The circuit has "set a low bar" for this digit, noting that "a plaintiff need provide very little proof of actual confusion . . . to prove likelihood of confusion." *Id.*  "While very little proof of actual confusion [is] necessary to prove the likelihood of confusion, an almost overwhelming amount of proof [is] necessary to refute such proof." *Xtreme Lashes*, 576 F.3d at 229.

NeighborFavor provides evidence of 11 instances of actual consumer confusion starting in March of 2022 and continuing through late September of 2022.  NeighborFavor provides screenshots of messages that customers mistakenly directed to NeighborFavor instead of Hey Favor.  For example, a message sent from a customer on March 31, 2022, to NeighborFavor reads: "I received an update text from the Pill Club about my monthly Rx shipment and it looks like you guys have merged."  On June 10, 2022, another customer reached out to NeighborFavor about not receiving a birth-control refill, noting that she had trouble accessing her account after "the transition to Favor."  In the same message, the customer provided NeighborFavor with her exact prescription information.  In a communication chain from August of 2022, another customer attached an email from Hey Favor when communicating with NeighborFavor's support team about account access.  After several exchanges, NeighborFavor's support team informed the customer that she was "trying to reach out to a different company listed as Favor," and the customer

responded that she "FEEL[S] LIKE A BIG DUMBY." The court finds that these instances of consumer confusion constitute strong evidence of actual confusion in the marketplace.

Hey Favor responds with two customer surveys conducted by its expert, Brian Sowers. Sowers's *Eveready* consumer-confusion surveys found a "net" confusion rate of 0.0% when comparing (1) whether "consumers of women's healthcare services and products nationwide" are likely to be confused as to whether Hey Favor's products and services are affiliated with NeighborFavor and (2) whether "consumers of on-demand delivery services in Texas" are likely to be confused as to whether NeighborFavor's products and services are affiliated with Hey Favor. In response to Hey Favor's surveys, NeighborFavor retained Dr. Robert A. Peterson as a rebuttal expert, who testified that Sowers's surveys involved three "fatal flaws":  (1) the surveys inappropriately relied on "consumers of women's healthcare services and products" who did not reside in Texas, which almost guaranteed low or zero confusion rate; (2) Sowers's choice of an *Eveready* format was inappropriate because the trademarks at issue are identical; and (3) Sowers conducted the surveys such that they amounted to a "reading test" instead of a likelihood-of-confusion test.  Having heard testimony from both experts, the court finds that Hey Favor's consumer surveys provide little impact on the court's analysis of the actual-confusion digit. Considering the 11 instances of consumer confusion that NeighborFavor provides, Sowers's ultimate conclusion of a 0.0% net confusion rate appears dubious, at best.  The court further finds that Peterson makes valid critiques of Sowers's survey methodology.  While the court considers Sowers's surveys when analyzing the actual-confusion digit, the court finds NeighborFavor's anecdotal instances of confusion more persuasive. *See Viacom*, 891 F.3d at 197 ("[A] survey can be 'so badly flawed that it cannot be used to demonstrate . . . the likelihood of consumer confusion.'").

Hey Favor further argues that NeighborFavor's anecdotal instances of consumer confusion constitute "fleeting mix-up[s] of names" that have not "swayed consumer purchases." *See Future Proof*, 982 F.3d at 296 (one instance of confusion by wholesaler's employee constituted "fleeting mix-up" instead of actual consumer confusion). Hey Favor argues that the court must consider evidence of confusion from *potential* customers as opposed to confusion from *existing* customers. *See Citizens Nat. Bank of Meridian v. Citizens Bank of Phila. Miss.*, 35 F. App'x 391 (5th Cir. 2002) (per curiam) (unpublished).[1]

The court finds Hey Favor's arguments unpersuasive. As NeighborFavor correctly points out, evidence of actual confusion is relevant regardless of the identity of the confused person. *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 597 (5th Cir. 1985) (lower court erred in disregarding actual confusion by distributors and trade-show visitors); *Board of Regents of the Univ. of Houston Sys. on Behalf of the Univ. of Houston Sys. & Its Member Institutions v. Houston Coll. of L., Inc.*, 214 F. Supp. 3d 573, 596–97 (S.D. Tex. 2016) ("While true that '[t]rademark infringement occurs only when the use . . . is likely to confuse purchasers,' courts and commentators have also repeatedly recognized that 'evidence of confusion in others permits the inference of confusion in purchasers.'"). Moreover, just because a confused customer is an *existing* customer of Hey Favor does not exclude the possibility that the same individual is a *potential* customer of NeighborFavor. For example, if an existing customer of Hey Favor is dissatisfied with Hey Favor's services and is also confused by the parties' trademark usage, that customer may be swayed against using NeighborFavor's services. Several of NeighborFavor's proffered examples of actual confusion demonstrate this possibility, with one customer requesting

---

[1] The court notes that "unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)." 5TH CIR. R. 47.5.4.

for her "Favor account to be deleted." Considering that NeighborFavor need provide only "very little proof of actual confusion"—and considering that Hey Favor must provide "an almost overwhelming amount of proof to refute such proof"—the court concludes that NeighborFavor's evidence of actual confusion weighs strongly in favor of a finding of likelihood of success on the issue of confusion. *See Viacom*, 891 F.3d at 197; *Xtreme Lashes*, 576 F.3d at 229.

    *viii.*    *Degree of care exercised by potential purchasers*

"Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Id.* at 231. However, a high price tag alone does not negate other indicia of likelihood of confusion, especially if the goods or marks are similar. *Id.*

NeighborFavor argues that both parties offer delivery services at low prices, with Hey Favor offering medication for $0 with insurance or "as low as $6.99" without insurance and NeighborFavor charging between $1 to $10 for most deliveries. NeighborFavor argues that these low prices suggest a lack of consumer care and an increased likelihood of confusion. Hey Favor responds that its customers are "sophisticated" and thus more careful and discerning because they seek to purchase birth-control medication, which typically requires the customers to navigate complicated processes involving medical professionals and health insurance. Hey Favor further argues that its products can cost as much as $3,000 without insurance.

The court finds that a typical customer for both companies will make relatively inexpensive purchases. However, because Hey Favor's business requires a customer to navigate the oftentimes complex American healthcare system, the court agrees that Hey Favor's customers exhibit an added degree of care. *See Essentia Health v. Gundersen Lutheran Health Sys., Inc.*, No. 17-CV-100-WMC, 2017 WL 1318112, at *6 (W.D. Wis. Apr. 7, 2017) (decisions involving "reproductive health care services" involve "a high degree of care"). The court concludes that the degree-of-care

digit does not weigh in favor of a finding of likelihood of success on the issue of confusion. However, this added degree of care does not negate other indicia of likelihood of confusion, especially because the trademarks at issue are identical. *See Xtreme Lashes*, 576 F.3d at 231.

Having considered all eight digits of confusion, the court concludes that all but two weigh in favor of a finding of likelihood of success on the issue of confusion. Importantly, the actual-confusion digit, which provides the "best evidence of a likelihood of confusion," weighs heavily towards such a finding. *See Viacom*, 891 F.3d at 197. The court concludes that NeighborFavor has demonstrated a likelihood of success on the merits for the purposes of obtaining a preliminary injunction on its trademark-infringement claim.

### 2. *Irreparable injury*

NeighborFavor must also establish the second requirement for a preliminary injunction—that it will suffer irreparable injury in the absence of injunctive relief. NeighborFavor first directs the court to the Lanham Act, as amended in 2020, which provides a "rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits." 15 U.S.C. § 1116(a). Because the court finds that NeighborFavor has demonstrated a likelihood of success on the merits on the trademark-infringement claim, the Lanham Act entitles NeighborFavor to the presumption of irreparable harm.

Presumption notwithstanding, NeighborFavor also argues that it suffers irreparable harm because it cannot control the quality of Hey Favor's products or services and thus faces harm to its reputation and goodwill. Bath testified that NeighborFavor has spent tens of millions of dollars on marketing to help "control [NeighborFavor's] brand." According to Bath, the actual confusion spurred by Hey Favor's use of the FAVOR mark (1) reduces the control that NeighborFavor has over its brand; (2) lessens the returns on money that NeighborFavor spends on marketing; (3)

19

subjects NeighborFavor to public-relations concerns when Hey Favor makes political statements; and (4) subjects NeighborFavor to privacy-law concerns and potential liability risks when Hey Favor's customers send NeighborFavor confidential medical information.

Hey Favor argues that NeighborFavor fails to show that it has suffered tangible harm. Hey Favor further argues that NeighborFavor delayed in sending a cease-and-desist letter and moving for preliminary injunction upon learning of Hey Favor's use of the FAVOR mark in late March of 2022. The court disagrees with Hey Favor's characterizations of NeighborFavor's timeline for seeking relief. Upon learning of Hey Favor's rebrand, NeighborFavor acted diligently in acquiring counsel, researching its claims, and sending Hey Favor a cease-and-desist letter in early May of 2022. NeighborFavor engaged Hey Favor in settlement discussions before suing in June of 2022. NeighborFavor continued to engage with Hey Favor before filing the motion for preliminary injunction on July 28, 2022, including a phone call between Bath and Meyerdirk on July 26, 2022. The court finds that NeighborFavor acted diligently in seeking relief. The court further finds that Hey Favor has not presented evidence or argument sufficient to rebut NeighborFavor's presumption of irreparable harm. The court concludes that NeighborFavor has established that it will suffer irreparable injury in the absence of injunctive relief.

### 3. *Balance of equities*

The third requirement for a preliminary injunction requires NeighborFavor to establish that the balance of equities tips in its favor. NeighborFavor argues that the irreparable injury that it suffers outweighs any harm to Hey Favor. NeighborFavor further argues that because it duly registered its FAVOR marks and sent a cease-and-desist letter upon learning of Hey Favor's rebranding, any cost or inconvenience that an injunction poses on Hey Favor is Hey Favor's to bear.

Conversely, Hey Favor argues that a preliminary injunction will cause "catastrophic" harm. Hey Favor argues that it "spent a considerable amount of time, effort, and money" on its re-branding efforts, including $375,000 in marketing-agency fees. Meyerdirk testified that Hey Favor spent an additional $2.5 million in actually implementing the re-brand, which included expenditures for hiring engineers, product developers, and designers, as well as money spent on contracting with a third-party software development firm to augment Hey Favor's in-house coding efforts. Meyerdirk testified that, should NeighborFavor successfully obtain a preliminary injunction, Hey Favor "would just have to stop offering our service." Meyerdirk testified that Hey Favor cannot easily revert to its previous name, The Pill Club, because "our underlying code base has improved and grown under the Favor name." Meyerdirk further testified that if Hey Favor had to operate under a completely new name, it would have to again expend the time and money to choose a new name and undergo the same recoding and development process, which would take even longer in this instance because of Hey Favor's reduced budget. Hey Favor cites further concerns for the court to consider in balancing the hardships, including the time it would take for customers to regain trust in the company.

Further complicating the court's balancing task is the fact that Hey Favor's rebranding efforts caused the company to suffer losses independent of this lawsuit. Meyerdirk testified that after Hey Favor began operating under the FAVOR mark, monthly revenue declined by 30%, which Meyerdirk attributes to a "loss of trust and legitimacy." This lawsuit notwithstanding, Meyerdirk asserts that it would take 12 to 18 more months to regain customer trust.

The court is sympathetic to Hey Favor's claims that it will need to expend considerable time and money to comply with an injunction, especially considering its reduced revenues following the March 2022 rebrand. However, in choosing to rebrand under the FAVOR mark,

Hey Favor took a calculated risk. As Meyerdirk testified, Hey Favor weighed the positives and negatives of rebranding before deciding to change its name. Although Meyerdirk testified to some measures Hey Favor took to avoid trademark infringement when rebranding, these measures show an almost deliberate avoidance of discovering NeighborFavor's use of the FAVOR mark. Meyerdirk testified that she performed a Google search on the name "Favor," but only in conjunction with the words "health" or "healthcare." In searching for possible trademark issues outside of the health industry, Hey Favor looked towards only "global multinationals and large companies where Favor would've been immediately obvious." Considering the size of NeighborFavor's company, its exposure in national news-media outlets, and the tens of millions of dollars NeighborFavor has spent on online advertising, the court struggles to accept Hey Favor's position that it chose the name "Favor" without *any* knowledge of NeighborFavor's use of the mark. The court takes into consideration Hey Favor's care—or lack thereof—in avoiding trademark infringement in the first instance. *See Savage Tavern, Inc. v. Signature Stag, LLC*, 589 F. Supp. 3d 624, 661 (N.D. Tex. 2022) ("Trademark law and its enforcement should incentivize parties to clarify their rights in a mark before substantial investments are made.").

The court further observes that trademark law is frequently unsympathetic to infringing junior users of a mark. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("As we have previously ruled, the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself"); *Capece*, 141 F.3d at 205 ("Any acts after receiving a cease-and-desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts"); *Lakedreams v. Taylor*, 932 F.2d 1103, 1110 (5th Cir. 1991) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown

likely to be infringing, such an argument in defense 'merits little equitable consideration.'"). Even where the allegedly infringing defendant may suffer significant financial harm when facing an injunction, courts consistently find that the balance-of-hardships tilts in favor of the senior user who faces harm to its goodwill and reputation. *See, e.g., TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1333 (S.D. Fla. 2015) (issuing injunction where defendant "would effectively be forced out of business" because "[a]ny hardship from an injunction . . . is simply the natural consequence of [defendant's] unjustified use of the mark"); *Polar Corp. v. PepsiCo, Inc.*, 789 F. Supp. 2d 219, 240 (D. Mass. 2011) (issuing injunction where defendant would incur $1,000,000 in rebranding costs and lose substantial sales); *Buffalo Wild Wings Int'l, Inc. v. Grand Canyon Equity Partners, LLC*, 829 F. Supp. 2d 836, 846 (D. Minn. 2011) (issuing injunction where defendant would be "force[d] out of business" and forced to lay off 170 employees); *Boldface Licensing + Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178, 1198 (C.D. Cal. 2013) (issuing injunction where defendant would suffer millions of dollars in losses); *Alliance Bank v. New Century Bank*, 742 F. Supp. 2d 532, 566 (E.D. Pa. 2010) (issuing injunction where defendant spent hundreds of thousands of dollars on rebranding and defendant would need to again rebrand and revise advertising materials); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 326 (S.D.N.Y. 2010) (issuing injunction where defendant changed name to infringing mark and "no monetary sum [could] sufficiently remedy Plaintiff for this type of harm to its name and brand").

The court finds that the balance of equities tips in NeighborFavor's favor.

### 4. *Public interest*

To satisfy the fourth and final requirement for a preliminary injunction, NeighborFavor must establish that the injunction would serve the public interest. As NeighborFavor correctly

points out, "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *See Board of Regents*, 214 F. Supp. 3d at 605. The consuming public also has a protectable interest in being free from "confusion, deception, and mistake." *See NYP Holdings v. New York Post Pub. Inc.*, 63 F. Supp. 3d 328, 342 (S.D.N.Y. 2014). The court finds that NeighborFavor has established that a preliminary injunction would serve the public interest.

Having concluded that NeighborFavor has established each of the four requirements necessary for a preliminary injunction, the court will grant NeighborFavor's motion.

## IV.    CONCLUSION

**IT IS ORDERED** that Plaintiff NeighborFavor, Inc.'s Motion for Preliminary Injunction (Doc. #6) is **GRANTED**. Defendant Hey Favor, Inc. shall cease all use of the FAVOR mark, and any other confusingly similar marks, **on or before January 20, 2023**, until the court renders a final judgment in this case. Hey Favor shall file with the court a notice confirming compliance with this order **on or before February 13, 2023**.

**IT IS FURTHER ORDERED** that Plaintiff NeighborFavor, Inc.'s Motion to Dismiss Defendant's Cancellation Counterclaims (Doc. #20) is **GRANTED**. Defendant Hey Favor, Inc.'s cancellation counterclaims against Plaintiff NeighborFavor, Inc. are **DISMISSED WITH PREJUDICE**.

SIGNED this _____ *6th* _____ day of January, 2023.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE